**IN THE UNITED STATES COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| MEDARC, LLC, as Collection Agent for | § | |
| Jeffrey H. Mims, Trustee of the Liquidating | § | |
| Trust of Revolution Monitoring, LLC, | § | |
| Revolution Monitoring Management, LLC, and | § | |
| Revolution Neuromonitoring, LLC. | § | |
| | § | Civil Action No. 3:20-cv-03687-N-BH |
| *Plaintiff*, | § | |
| | § | |
| v. | § | |
| | § | |
| CIGNA BEHAVIORAL HEALTH OF | § | |
| TEXAS; *et al*. | § | |
| | § | |
| *Defendants*. | § | |

**PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S**
**FIRST AMENDED COMPLAINT**

## TABLE OF CONTENTS

I.     INTRODUCTION AND SUMMARY ...........................................................................1

II.    LEGAL STANDARD..............................................................................................3

III.   ARGUMENT ......................................................................................................4

      A.     MedARC has proper standing under ERISA. ...............................................4

      B.     MedARC has provided the detailed confidential information Cigna requests on multiple occasions and has pled its claims with sufficient specificity................5

      C.     Exhaustion is an affirmative defense that MedARC is not required to allege; furthermore, MedARC has properly alleged an exception to exhaustion...........8

          1.     Exhaustion is an affirmative defense MedARC is not required to plead.....9

          2.     MedARC pled that remedies were exhausted..........................................10

          3.     MedARC properly pled that remedies should be deemed exhausted because Revolution relied on Defendants' own statements that Revolution would be reimbursed for services. ..........................................................12

          4.     MedARC pled properly that remedies should be deemed exhausted because Defendants failed to follow reasonable claims procedures..........13

IV.    CONCLUSION..................................................................................................15

**TABLE OF AUTHORITIES**

**Page(s)**

CASES

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007)................................................................................3

*Bourgeois v. Pension Plan for Employees of Santa Fe Int'l Corps.*,
    215 F.3d 475 (5th Cir. 2000) .........................................................10, 12

*Collins v. Morgan Stanley Dean Witter*,
    224 F.3d 496 (5th Cir. 2000) ................................................................3

*Denton v. First Nat. Bank of Waco, Texas*,
    765 F.2d 1295 (5th Cir. 1985) ............................................................10

*Doctor's Hosp. of Slidell, LLC v. United HealthCare Ins. Co.*,
    No. 10-3862, 2011 WL 13213620 (E.D. La. Apr. 27, 2011)............................3, 5

*Dupre v. State Farm Mut. Auto. Ins. Co.*,
    No. 2:14-CV-00715-HGB, 2014 WL 2441124 (E.D. La. May 30, 2014)............10

*Encompass Office Solutions, Inc. v. Conn. Gen. Life Ins. Co.*,
    No. 3:11–cv–02487–L, 2012 WL 3030376 (N.D. Tex. July 25, 2012).............4, 10

*Ford v. Freemen*,
    388 F. Supp. 3d 692 (N.D. Tex. 2019) .......................................3, 12, 13

*Infectious Disease Doctors, P.A. v. Bluecross Blueshield of Tex.*,
    No. 3:13-2920, 2015 WL 4992964 (N.D. Tex. Aug. 21, 2015) ..............................6

*Innova Hosp. San Antonio, L.P. v. Blue Cross & Blue Shield of Georgia, Inc.*,
    995 F. Supp. 2d 587 (N.D. Tex. 2014) ..................................................4

*Jones v. Merchants & Farmers Bank of Holly Springs, Mississippi*,
    No. 3:18-CV-145-RP, 2019 WL 2425677 (N.D. Miss. June 10, 2019) .................11

*Lacy v. Fulbright & Jaworkski, LLP Long Term Disability Plan*,
    405 F.3d 254 (5th Cir. 2005) ..............................................................10

*McGowin v. Manpower Int'l, Inc.*,
    363 F.3d 556 (5th Cir. 2004) ..............................................................10

*McMicking v. Schields*,
    238 U.S. 99 (1915)...............................................................................7

*Murphy v. Verizon Commc'ns, Inc.*,
   No. 3:09-CV-2262-G, 2010 WL 4248845 (N.D. Tex. Oct. 18, 2010) ....................................14

*N. Cypress Med. Ctr. Operating Co. v. CIGNA Healthcare*,
   782 F. Supp. 2d 294 (S.D. Tex. 2011), *aff'd sub nom. N. Cypress Med. Ctr.
   Operating Co. v. Cigna Healthcare*, 781 F.3d 182 (5th Cir. 2015)............................................4

*Shirley v. Fluor Corp.*,
   No. CV 19-00223-BAJ-RLB, 2020 WL 1442950 (M.D. La. Mar. 24, 2020) ........................11

*Swenson v. Eldorado Casino Shreveport Joint Venture*,
   No. 15-CV-2042, 2017 WL 1334307 (W.D. La. Apr. 7, 2017), *aff'd sub nom.
   Swenson v. United of Omaha Life Ins. Co.,* 876 F.3d 809 (5th Cir. 2017) ............................12

*Thibodeaux v. Prudential Ins. Co. of Am.*,
   2008 WL 5397236 (W.D. La. Oct. 30, 2008) ..........................................................................9

*Thomas v. Metro. Life Ins. Co.*,
   No. 15-1733, 2016 WL 80634 (E.D. La. Jan. 7, 2016)........................................................11

## STATUTES

29 U.S.C. § 1132(g)(1) ................................................................................................................ 3
29 U.S.C. 1132(a) ..................................................................................................................... 13
29 U.S.C. 1132(a)(1)(B) ........................................................................................................ 1, 3

## RULES

Federal Rule of Civil Procedure 12(b)(6) ............................................................................ 1,3,9

Plaintiff MedARC LLC, as collection agent for Jeffrey H. Mims, Trustee of the Liquidating Trust of Revolution Monitoring, LLC, Revolution Monitoring Management, LLC, and Revolution Neuromonitoring, LLC ("Plaintiff" or "MedARC") files this Response in Opposition to Defendants Cigna Behavioral Health of Texas; Cigna Behavioral Health, Inc.; Cigna Health Management, Inc.; Cigna Health Network, Inc.; Cigna HealthCare of Texas, Inc.; Cigna Insurance Agency, LLC; Cigna Integrated Care, Inc. and Cigna Re Corporation's (collectively "Cigna" or "Defendants") Motion to Dismiss Counts I–III of MedARC's First Amended Complaint. In support of its Response, MedARC states as follows:

## I.       INTRODUCTION AND SUMMARY

Plaintiff brought this action to recover more than $16 million for intraoperative neuromonitoring services provided to Cigna's insureds by Revolution Neuromonitoring, a company now in bankruptcy proceedings. Defendants move to dismiss Plaintiff's First Amended Complaint under the following theories: (1) MedARC lacks standing because it did not allege that it obtained assignments from "each and every" Cigna insured, and thus lacks standing to bring claims under 29 U.S.C. 1132(a)(1)(B). (2) MedARC fails to state a claim because it does not identify the health benefit claims on which it bases each cause of action, and (3) MedARC does not allege that it exhausted all administrative remedies prior to filing.

Defendants' arguments fail for the following reasons: (1) MedARC pled that it received assignments from the relevant patients, satisfying Rule 12(b)(6); (2) MedARC excluded the confidential health benefit claim information of Cigna's insureds, but has provided this confidential patient information subject to a Protective Order and an earlier demand letter; (3) exhaustion is an affirmative defense and is not a proper issue for a motion to dismiss. Moreover,

1

Plaintiff has pled that exhaustion would be futile, thus satisfying any requirement to plead exhaustion of remedies.

Prior to filing for bankruptcy, Revolution provided intraoperative neurophysiological monitoring medical services to neuro, orthopedic, vascular, and ear-nose-and-throat surgeries operating around delicate parts of the nervous system. *See* Plaintiff's First Amended Complaint at ¶ 20 [Doc. No. 21]. Between June 2014 and August 2017, Revolution rendered medical services to Cigna's insureds, requiring Cigna to pay under the terms of the insureds' health benefit plans. *Id.* at ¶¶ 1, 25–28.  As a matter of policy, before providing each of these medical services, Revolution verified with Cigna that each procedure would be covered under the Cigna insured's plan. *Id*. at ¶¶ 33–38. Revolution also required the Cigna insured to assign Revolution the right to collect payment directly from Cigna, and to enforce the right to collect payment on services rendered on behalf of the Cigna insured. *Id*. at ¶¶ 33–38.

The medical services Revolution provided to Cigna insureds were necessary and reasonable medical services, and resulted in hundreds of claims worth millions of dollars. *Id*. at ¶¶ 36, 47. But Cigna Defendants failed to properly reimburse Revolution for the services that Revolution rendered to Cigna's insureds. *Id*. at ¶ 48. Cigna Defendants underpaid Revolution on more than 200 claims exceeding $16 million in rendered medical services, contributing to the nearly $450 million in medical receivables that forced Revolution into Chapter 11 bankruptcy. *Id.*; *see also* Am. Joint Disclosure Statement of Revolution Monitoring, LLC [Doc. No. 82].

On September 27, 2018, Revolution filed its Chapter 11 petition in the United States Bankruptcy Court for the Northern District of Texas.[1] On September 18, 2020, MedARC

---

[1] The Revolution Monitoring Management bankruptcy petition was filed in the Northern District of Texas on October 5, 2018, and it is currently pending as case no. 3:18-bk-33731. The

commenced this adversary proceeding by filing a complaint against Cigna for failure to properly reimburse Revolution for medical services rendered to Cigna's insureds. [Doc. No. 7]. Specifically, MedARC brought (1) claims under ERISA's civil enforcement provisions, including claims to recover benefits under health benefit plans, 29 U.S.C. 1132(a)(1)(B), (2) attorney's fees and costs pursuant to 29 U.S.C. § 1132(g)(1), and (3) state law breach of contract claims. [Doc. No. 21 at ¶ 47].

## II.    LEGAL STANDARD

Motions to dismiss under Federal Rule of Civil Procedure 12(b)(6) are "viewed with disfavor and rarely granted." *Doctor's Hosp. of Slidell, LLC v. United HealthCare Ins. Co*., No. 10-3862, 2011 WL 13213620, at *3 (E.D. La. Apr. 27, 2011) (citing *Lowrey v. Texas A&M Univ. Sys.*, 117 F.3d 242, 247 (5th Cir. 1997)). In reviewing a Rule 12(b)(6) motion to dismiss, the court must determine "whether[,] in the light most favorable to the plaintiff and with every doubt resolved in his behalf, the complaint states any valid claim for relief." *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000) (quotation omitted). A court must accept the factual allegations in the pleadings as true, and to state a valid claim for relief, MedARC must merely plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Cornish v. Corr. Services Corp.,* 402 F.3d 545, 551 (5th Cir. 2005). In addition, "a complaint is not subject to dismissal under Rule 12(b)(6) because it fails to allege facts disproving a possible affirmative defense." *Ford v. Freeman*, 388 F. Supp. 3d 692, 708 (N.D. Tex. 2019) (citing *Hall v. Hodgkins*, 305 F. App'x 224, 228 n.1 (5th Cir. 2008)).

---

Revolution Neuromonitoring, LLC bankruptcy petition was filed in the Northern District of Texas on October 5, 2018, and it is currently pending as case no. 3:18-bk-33732.

### III.   ARGUMENT

**A.   MedARC has proper standing under ERISA.**

The basis of Cigna's standing argument is the faulty assumption that MedARC "does not allege that any Cigna member, much less each and every member, actually executed an assignment in support of its ERISA claims." [Doc. No. 10 at p. 7]. Defendant is mistaken. MedARC pled that "each Cigna [i]nsured treated by Revolution signed an assignment of benefits form" and that "***each and every Cigna insured actually assigned their benefits to Revolution***." [Doc. No. 21 at ¶ 38] (Emphasis added). Cigna's argument therefore fails.

As a matter of law, MedARC's combined allegations that "each and every Cigna insured actually assigned their benefits to Revolution," and that each insured executed an assignment "as a matter of policy" are sufficient to survive a motion to dismiss. *See Encompass Office Solutions, Inc. v. Conn. Gen. Life Ins. Co.,* No. 3:11–cv–02487–L, 2012 WL 3030376, at \*4 (N.D. Tex. July 25, 2012) (holding that the plaintiff "was not required to come forward with copies of every executed assignment to establish standing" because it alleged in its complaint that it was its "practice to receive" such assignments); *Innova Hosp. San Antonio, L.P. v. Blue Cross & Blue Shield of Georgia, Inc.*, 995 F. Supp. 2d 587, 599 (N.D. Tex. 2014) (finding allegations that plaintiffs "required all patients to 'execute an assignment of benefits form prior to receiving healthcare services'" and that plaintiffs "had the right to enforce the terms of the plans and recover the benefits due under the plans" were adequate to demonstrate standing). Cigna is aware of the pleadings standard, as it has encountered the issue before. *See N. Cypress Med. Ctr. Operating Co. v. CIGNA Healthcare*, 782 F. Supp. 2d 294, 300–01 (S.D. Tex. 2011), *aff'd sub nom. N. Cypress Med. Ctr. Operating Co. v. Cigna Healthcare*, 781 F.3d 182 (5th Cir. 2015) (finding adequately pled, valid assignment where plaintiff's complaint alleged provider "obtains

an Assignment of Benefits and Rights that makes [provider] a beneficiary of the ERISA plan and the non-ERISA contracts").

MedARC pled sufficient facts to demonstrate standing as a matter of both law and fact. Defendants' Motion to Dismiss Plaintiff's First Amended Complaint for lack of standing should therefore be denied.

**B.    MedARC has provided the detailed confidential information Cigna requests on multiple occasions and has pled its claims with sufficient specificity.**

Defendants incorrectly state in their Motion to Dismiss that Plaintiff's First Amended Complaint is defective because it does not include sufficient confidential information about the patients and services provided, including:

> the identity of the patient and the nature and date of the services, the patient's ERISA plan, the amount billed and paid on those claims, the scope of the assignment of rights (including whether it assigned the right to request plan documents), the steps taken to exhaust administrative appeals for those claims, the requests made for plan documents, and the nature of pre-service verifications.

[Doc. No. 10 at 7–8] (citing *Doctor's Hosp. of Slidell, LLC v. United HealthCare Ins. Co.*, No. 10-3862, 2011 WL 13213620, at *3 (E.D. La. Apr. 27, 2011)). While some courts within this Circuit have dismissed cases with leave to amend including this information, they have done so because Defendants lacked specific information about the claims at issue. *Doctor's Hosp. of Slidell, LLC v. United HealthCare Ins. Co.*, No. 10-3862, 2011 WL 13213620, at *3 (E.D. La. Apr. 27, 2011) ("proceeding wholesale does not relieve Plaintiffs of their obligation to inform Defendants and the Court of that same minimal factual content with respect to precisely what claims they seek to enforce"). In this case, Cigna possesses all the information it has requested about the precise claims at issue because MedARC has provided it to Cigna twice. Therefore, dismissal would be inappropriate. *See Doctor's Hosp. of Slidell, LLC* No. 10-3862, 2011 WL 13213620, at *3 ("[p]laintiffs should provide in some form, ***whether as an attachment to an***

5

*amended complaint or otherwise*, enough basic factual information regarding each of the specific claims that Plaintiffs contend are actually at issue") (emphasis added); *Infectious Disease Doctors, P.A. v. Bluecross Blueshield of Tex.*, No. 3:13-2920, 2015 WL 4992964, at *4 & n.3 (N.D. Tex. Aug. 21, 2015) (declining dismissal where plaintiffs attached "tables identifying the patient name, the policy number, the group number, the name of the physicians, the home state, the billed amount, and the [medical record number] to an amended complaint").

Cigna is aware of all the claims at issue in this case, and has been since before this suit was filed. On November 8, 2019, MedARC sent Cigna a confidential settlement offer letter, claiming total billed charges of $16,554,421 which spanned 206 unpaid claims.[2] Attached to this letter was a spreadsheet of each claim at issue, including each Cigna insured's name, ID number, insurance company, the date of each service (all between June 2014 and August 2017), policy number, claims number, and the services provided. *See* Exhibit A at 1, 4–7. In its complaint, MedARC pled substantially similar facts, including "Defendants' failure to reimburse spanned over a period of approximately three years covering more than 200 claims and exceeding $16,000,000 in rendered medical services" and "Revolution provided medical services to those patients for the claims at issue between June 2014 and July 2017." [Doc. No. 21 at ¶ 1]. In light of the nearly identical allegations prior to filing suit, Cigna has had in its possession all the information necessary to defend its complaint even before the suit was filed.

After the present action was filed, MedARC again provided Cigna with the same information they seek now, this time pursuant to a protective order and separate from the Complaint. [Doc. No. 14]. Plaintiff did not include personal identifiable medical information[3] in

---

[2] This letter and its original attachments are attached and incorporated as Exhibit A.
[3] i.e. identity of the patient and the nature and date of the services, the patient's ERISA plan, and the amount billed and paid on those claims

its public pleadings to protect the privacy of Cigna's insureds whose unpaid claims are at issue and avoid potential HIPAA liability as a medical provider disclosing sensitive patient information. In their motion, Defendants are seeking information regarding more than 200 claims for well over a hundred patients. This information includes sensitive identifying information, such as names, insureds' ID numbers (which are often the same as the insureds' social security numbers), and billing codes (which reveal detailed information about the services patients received). Given the sensitive nature of this information, it would be inappropriate for the Court to require Plaintiffs to release identifying medical information about Cigna insureds in a public complaint. Indeed, as an entity subject to HIPAA restrictions itself, Cigna is well aware of the risk this would pose to its insureds.

   To facilitate the case's progress, rather than file an Amended Complaint under seal, Plaintiff has shared this information with Defendants under a protective order in a way that protects the personally identifiable information of Cigna's insureds. *See* [Doc. No. 13.] Rather than dismiss the case and penalize MedARC for protecting the Cigna insureds' confidential patient information, the Court should allow the Complaint to stand or, in the alternative, grant leave to amend and re-file under seal. *See McMicking v. Schields*, 238 U.S. 99, 103, (1915) ("The law does not require a vain and useless thing.").

   Third, even in the absence of the settlement offer and the information shared pursuant to the protective order, Plaintiff pled the scope of the assignment of rights with reasonable particularity in its Complaint. In its First Amended Complaint, MedARC not only pled that all Cigna Beneficiaries at issue in this case signed the same Assignment of Benefits form, but also attached that Assignment of Benefits as an exhibit. [Doc. No. 21 at 1]. Plaintiff further alleged:

   "The executed Assignment of Benefits transferred and assigned to Revolution the following non-exhaustive list of rights and interests: (1) the rights and interest to

> collect and be reimbursed for the medical service(s) performed for the patient; (2) the rights and interest to obtain plan documents and other related documentation and information by both provider and its attorney; (3) the rights and interest to any legal or administrative claims and causes of action; (4) the right to bring legal action, if needed, against the insurer or health benefits plan to recover costs or enforce coverage; and (5) the reasonable assistance of the patient in pursuing third-party payments.

*Id.* Contrary to Cigna's assertions, this is more than enough information for a well-pled complaint.

In addition, MedARC pled sufficient facts regarding its pre-service verifications. [Doc. No. 21 at ¶¶ 33–37]. In its First Amended Compliant, MedARC pled the following. "As a matter of policy and procedure, before Revolution rendered reasonable and necessary medical services for any of the claims at issue, Revolution received verification by telephone from Defendants that each patient was covered by a health benefit plan that provided out-of-network benefits." *Id.* at ¶ 36. "Revolution obtained verification from Defendants that the particular procedures were covered by the relevant health benefit plan and would be paid in accordance with the health benefit plan." *Id.* During the verification process, "Defendants failed to identify, allege, assert, or rely on any exclusions, conditions, or other prerequisites within the relevant health benefit plans, including but not limited to anti-assignment provisions." *Id.* Revolution "would not have provided these services to these patients without first obtaining this verification from Defendants." *Id.*

### C.      Exhaustion is an affirmative defense that MedARC is not required to allege; furthermore, MedARC has properly alleged an exception to exhaustion.

Cigna's motion to dismiss for an alleged failure to plead exhaustion of administrative remedies fails because exhaustion of administrative remedies is an affirmative defense and is an inappropriate basis for granting a motion to dismiss. Furthermore, MedARC has alleged facts showing that exhausting administrative remedies would be futile.

8

**1.      Exhaustion is an affirmative defense MedARC is not required to plead.**

Cigna acknowledges that the failure to exhaust administrative remedies is an affirmative defense that "is often not suited for resolution at the motion to dismiss stage." [Doc. No. 10 at 10]; *see also Ford*, 388 F. Supp. 3d at 708 ("Exhaustion of administrative remedies, however, is not a jurisdictional bar; it is an affirmative defense."). The Fifth Circuit has held the same, stating that "a complaint is not subject to dismissal under Rule 12(b)(6) because it fails to allege facts disproving a possible affirmative defense." *Id.* (citing *Hall v. Hodgkins*, 305 F. App'x 224, 228 n.1 (5th Cir. 2008)); *see also Thibodeaux v. Prudential Ins. Co. of Am.*, 2008 WL 5397236, at *1 (W.D. La. Oct. 30, 2008), report and recommendation adopted, CV 08-1028, 2008 WL 11515999 (W.D. La. Dec. 23, 2008) ("The proper procedural vehicle for assertion of the affirmative defense of lack of ERISA administrative exhaustion is by way of properly supported motion for summary judgment.").

The proper time to raise exhaustion of administrative remedies is not at the motion to dismiss stage; it is at summary judgment. *Ford v. Freemen*, 388 F. Supp. 3d 692, 708 (N.D. Tex. 2019) (quoting *Thibodeaux v. Prudential Ins. Co. of Am.*, 2008 WL 5397236, at *1 (W.D. La. Oct. 30, 2008). [4] In fact, many of the cases upon which Defendants rely were decisions or appeals at the Motion for Summary Judgment stage – the proper stage for this decision. [5]   In each of these

---

[4] Furthermore, Defendants are seeking the wrong remedy. In a case such as this one, where the defendant insurance company has failed to substantially comply with ERISA's requirements, resulting in a failure to exhaust administrative remedies at summary judgment, the proper remedy is a remand to the insurance provider for a final decision. *See Encompass Office Solutions*, No. 3:11-CV-02487-L, 2017 WL 3268034, at *16. This remand is not a dismissal. *Id.*

[5] *See, e.g.*, *Bourgeois v. Pension Plan for Employees of Santa Fe Int'l Corps.*, 215 F.3d 475, 481 (5th Cir. 2000) (Motion for Summary Judgment); *Dupre v. State Farm Mut. Auto. Ins. Co.,* No. 2:14-CV-00715-HGB, 2014 WL 2441124, at *4 (E.D. La. May 30, 2014) (Motion for Summary Judgment), *Lacy v. Fulbright & Jaworkski*, *LLP Long Term Disability Plan*, 405 F.3d 254, 256-

cases, the parties were past discovery, and the plaintiffs were held to the summary judgment standard, which is higher than a well-pled complaint. Despite their many citations, Defendants have shown only the unremarkable premise that a court may grant summary judgment if, after the close of discovery, defendants have proved that plaintiffs did not exhaust their remedies. However, discovery has not closed here; it has not even begun.[6] The Court therefore should not dismiss MedARC's First Amended Complaint for the simple reason that Cigna's motion is untimely.

### 2. MedARC pled that remedies were exhausted.

Even if the Court did consider exhaustion at this time, dismissal would still be inappropriate, as MedARC pled sufficient facts to show that it exhausted its administrative remedies or, in the alternative, was not required to do so. In its First Amended Complaint, MedARC alleged that it properly submitted the claims, but that the claims were underpaid or denied despite Cigna's failure to identify any exclusions or other defenses:

> After medical services were performed, Revolution properly and timely submitted claims through Defendants' designated claims handling channels. Defendants either denied the claims outright or drastically underpaid the claims. Once again, Defendants failed to identify, allege, assert, or rely on any exclusions, conditions, or other prerequisites within the health benefit plan, including but not limited to anti-assignment provisions.

---

57 (5th Cir. 2005) (Motion for Summary Judgment), *McGowin v. Manpower Int'l, Inc.*, 363 F.3d 556, 559-60 (5th Cir. 2004) (Motion for Summary Judgment). .*Denton v. First Nat. Bank of Waco, Texas*, 765 F.2d 1295, 1303 (5th Cir. 1985), upon which Defendants rely heavily, is even later. *See Denton*, 765 F.2d at 1295 (Appeal of Trial Verdict).

[6] Although Cigna mentions "extended discovery" in its Motion, the discovery it refers to is in MedARC's pending bankruptcy case and does not cover the issues at hand here. *See* [Doc. No. 10 at 1].

[Doc. No. 21 ¶ 42]. MedARC further pled that it appealed the underpayments and non-payments through the proper channels, but that Cigna denied every appeal and still failed to provide any specific reason for the denials:

> **After Defendants either denied or underpaid the claims, Revolution or Plaintiff properly and timely appealed the non-payment or underpayment of the claims through Defendants' designated appeals channels. Defendants denied each and every appeal for each and every claim at issue in this lawsuit, thereby exhausting Revolution and Plaintiff's administrative remedies.**

*Id*. at ¶ 43 (emphasis added).

MedARC pled far more than the "bare-bones recitals" Defendants allege in their Motion to Dismiss. [Doc. 10 at 10]. In each case Cigna cited to support dismissal for failure to exhaust administrative remedies, the plaintiff either completely failed to mention exhaustion of administrative remedies in the pleadings, *see, e.g., Thomas v. Metro. Life Ins. Co*., No. 15-1733, 2016 WL 80634, at *3 (E.D. La. Jan. 7, 2016), or pled facts directly contrary to exhaustion of administrative remedies, *see, e.g., Jones v. Merchants & Farmers Bank of Holly Springs, Mississippi*, No. 3:18-CV-145-RP, 2019 WL 2425677, at *7 (N.D. Miss. June 10, 2019) (dismissing because plaintiff pled claims in his complaint that were not covered in the original exhausted administrative proceedings); *Shirley v. Fluor Corp*., No. CV 19-00223-BAJ-RLB, 2020 WL 1442950, at *2 (M.D. La. Mar. 24, 2020) (dismissing because plaintiff's allegations of writing letters to defendant insurance companies did not constitute administrative exhaustion because they did not follow the administrative process laid out in his plan).

Here, MedARC explicitly alleged that it exhausted remedies and that it followed the full exhaustion process for each and every claim at issue. Not only are MedARC's claims distinguishable from the cases Defendants cite, they constitute a well-pled allegation that remedies were exhausted. Therefore, dismissal is inappropriate.

**3.      MedARC properly pled that remedies should be deemed exhausted because Revolution relied on Defendants' own statements that Revolution would be reimbursed for services.**

MedARC also pled that because it relied on Cigna's statements regarding coverage, remedies should be deemed exhausted. [Doc. No. 21 at ¶36]. "[A] court should not relinquish its jurisdiction because of a failure to exhaust administrative remedies when there was a valid reason for such failure." *Bourgeois v. Pension Plan for Employees of Santa Fe Int'l Corps.*, 215 F.3d 475, 481 (5th Cir. 2000) (citing *Hall v. Nat'l Gypsum Co.*, 105 F.3d 225 (5th Cir. 1997)). A valid reason exists when "a claimant relies to his detriment on the words and actions of high-ranking company officers who purport to negotiate benefit decisions without actual authority." *Id.* at 481–82, 481 n.26 (citing *Carl Colteryahn Dairy, Inc. v. W. Pa. Teamsters & Emp'rs Pension Fund*, 847 F.2d 113, 121 (3d Cir. 1988)). *Bourgeois* makes clear that this estoppel-type deemed exhaustion is different from claims that exhaustion would be futile, which are generally disfavored. *Bourgeois*, 215 F.3d 475, at 479 (differentiating estoppel-type deemed exhaustion from futility exhaustion)*; see also Swenson v. Eldorado Casino Shreveport Joint Venture*, No. 15-CV-2042, 2017 WL 1334307, at *2 (W.D. La. Apr. 7, 2017), *aff'd sub nom. Swenson v. United of Omaha Life Ins. Co.*, 876 F.3d 809 (5th Cir. 2017) (same).

*Ford v. Freeman* is instructive. In that case, the court declined to dismiss plaintiff's claims despite the plaintiff's failure to exhaust administrative remedies. *Ford*, 388 F. Supp. 3d 692, 709 (N.D. Tex. 2019). The plaintiff based his claim on alleged misrepresentations made by an employee of the insurance company. *Id* at 709. The plaintiff then relied on this information when deciding how to redeem policy benefits to which he was a beneficiary. *Id.* at 711. The Court found that, because the plaintiff had relied on the misrepresentations of a company employee regarding his eligibility and options to redeem benefits, the plaintiff was not required to exhaust his administrative remedies. *Id*. MedARC alleges functionally identical facts. For

every patient at issue in this case, MedARC alleges that, before Revolution provided services to Cigna insureds, Revolution directly "obtained verification from Defendants that the particular procedures were covered by the relevant health benefit plan and would be paid in accordance with the health benefit plan." [Doc. No. 21 at ¶ 36]. It was only after this verification that Revolution provided its necessary medical services. *Id*. Revolution would not have provided services without this verification. *Id*. Like the plaintiff in *Ford*, MedARC pled that Revolution relied on Defendants' employees' representations to make decisions on the redemption of benefits before providing care. Thus, Plaintiff has addressed any exhaustion of remedies requirement that Cigna attempts to make at the Motion to Dismiss stage.

### 4.   MedARC pled properly that remedies should be deemed exhausted because Defendants failed to follow reasonable claims procedures.

Finally, MedARC pled deemed exhaustion due to Cigna's failure to follow reasonable claims procedures. In the Fifth Circuit:

> **when the administrator fails to follow claims procedures consistent with the [regulatory] requirements, including providing adequate notice that it has denied the claim, a claimant shall be deemed to have exhausted the administrative remedies available under the plan** and shall be entitled to pursue **any remedies** under section 502(a) [29 U.S.C. 1132(a)] of [ERISA] on the basis that the plan has failed to provide a reasonable claims procedure that would yield a decision on the merits of the claim.

*Murphy v. Verizon Commc'ns, Inc.*, No. 3:09-CV-2262-G, 2010 WL 4248845, at *10 (N.D. Tex. Oct. 18, 2010) (citing *Baptist Mem'l Hosp. - Desoto, Inc. v. Crain Auto., Inc.*, 392 F. App'x 289, 291 (5th Cir. 2010) (emphasis added).

MedARC also pled that Defendants' claims-handling process was unreasonable, and did not meet ERISA guidelines:

> Defendants failed to provide a specific reason or reasons for the adverse determination, failed to reference the specific plan provisions on which the determination was based, failed to identify, allege, assert, or rely on any exclusions, conditions, or other prerequisites within the health benefit plans,

> including but not limited to anti-assignment provisions, and failed to identify and provide a copy of the internal rule, guideline, protocol or other similar criterion that was relied upon in making the adverse determination. For example, Defendants' explanations often stated: (1) the claim was paid in accordance with the Allowable Amount; (2) the administrator maintained the prior decision; or (3) the claim was processed correctly.

[Doc. No. 21 at ¶ 43]. Additionally, MedARC pled that Defendants waived the defenses they now raise:

> As a result of Defendants' repeated failure to identify, allege, assert, or rely on any exclusions, conditions, or other prerequisites within the health benefit plans, Defendants have waived and are thereby estopped from asserting as such, including but not limited to anti-assignment provisions.

*Id.* at ¶ 44.

These facts demonstrate that Cigna's claims process was unreasonable. MedARC alleged in detail that, among other things, (1) Defendants made adverse claims determinations "without valid evidence or information to substantiate such determinations and/or in an arbitrary fashion, and did not provide a 'full and fair review' of denied or reduced reimbursements" as required under ERISA, [Doc. No. 21 at ¶ 7]; (2) Defendants made numerous procedural and substantive violations including unreasonably delaying "identification, assertion, or reliance on any exclusions, conditions, or other prerequisites within the health benefit plans including, but not limited to, anti-assignment provisions," *id.* at ¶ 45; (3) Defendants failed, despite multiple opportunities to do so, to "identify, allege, assert, or rely on any exclusions, conditions, or other prerequisites within the health benefit plans," *id.* at ¶ 46; (4) "Defendants, without proper justification and in violation of the plan terms, stopped paying Revolution for many services provided to Cigna [i]nsureds," *id.* at ¶ 66; and (5) "Defendants indiscriminately denied payment for most claims and services based on unsupported and erroneous assertions," *id.* at ¶ 67. Each of these allegations pled sufficient facts to give a plain and definite statement showing that

Defendant did not follow claims procedures consistent with regulatory requirements.[7] The combination of all the allegations indicates a defective claims process relieving MedARC of having to show exhaustion of remedies. Defendants' Motion to Dismiss for failure to exhaust administrative remedies is both untimely and unsupported and should be denied.

## IV.    CONCLUSION

For the foregoing reasons, Cigna Defendants' Motion to Dismiss is improper, untimely, and ignores the allegations pled in MedARC's complaint. The Court should DENY the Motion to Dismiss Plaintiff's First Amended Complaint.

---

[7] This applies even to claims for Medicare Part C, which has a different appeals system than other ERISA plans. *See* [Doc. No. 10 at 3]; *Texas Gen. Hosp., LP v. United Healthcare Servs., Inc.*, No. 3:15-CV-02096-M, 2016 WL 3541828, at *6 (N.D. Tex. June 28, 2016) (recognizing exception for exhaustion remedies when defendant insurance company did not substantially comply with ERISA's fair review requirements).

Date:   March 18, 2021

/s/ *Lewis T. LeClair*
Lewis T. LeClair
Texas State Bar No. 12072500
**MᴄKᴏᴏʟ Sᴍɪᴛʜ, P.C.**
300 Crescent Court Suite 1500
Dallas, Texas 75201
Telephone: (214) 978-4000
Telecopier: (214) 978-4044

/s/ *Nicholas A. Foley*
Nicholas A. Foley
Texas State Bar No. 07208620
8146 San Fernando Way
Dallas, Texas 75218

***ATTORNEYS FOR PLAINTIFF***
***MEDARC, LLC***

16

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and correct copy of the above and foregoing document has been served on all counsel of record via mail and the Court's ECF system on March 18, 2021.

*/s/ Lewis T. LeClair*
Lewis T. LeClair

4821-9262-2047