**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | | |
|---|---|---|
| **MEDARC, LLC, as Collection Agent for** | § | |
| **Jeffrey H. Mims, Trustee of the Liquidating** | § | |
| **Trust of Revolution Monitoring, LLC,** | § | |
| **Revolution Monitoring Management, LLC,** | § | |
| **and Revolution Neuromonitoring, LLC,** | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **Civil Action No. 3:20-CV-3687-N-BH** |
| | § | |
| **CIGNA BEHAVIORAL HEALTH OF** | § | |
| **TEXAS, et al.,** | § | |
| **Defendants.** | § | **Referred to U.S. Magistrate Judge[1]** |

**<u>FINDINGS, CONCLUSIONS, AND RECOMMENDATION</u>**

Before the Court is *Defendants's Motion to Dismiss Plaintiff's First Amended Complaint*,

filed February 25, 2021 (doc. 10). Based upon the relevant filings and applicable law, the motion

to dismiss should be **GRANTED** in part.

## I. BACKGROUND

MedARC, LLC, as Collection Agent for Jeffrey H. Mims, Trustee of the Liquidating Trust

of Revolution Monitoring, LLC, Revolution Monitoring Management, LLC, and Revolution

Neuromonitoring, LLC (Plaintiff), brings this action against Cigna Behavioral Health of Texas,

Cigna Behavioral Health, Inc., Cigna Health Management, Inc., Cigna Health Network, Inc., Cigna

HealthCare of Texas, Inc., Cigna Insurance Agency, LLC, Cigna Integrated Care, Inc., and Cigna

Re Corporation (collectively Defendants), to recover payments for out-of-network medical services

rendered to patients covered by health insurance plans. *See MedARC, LLC, as Collection Agent for*

*Jeffrey H. Mims, Trustee of the Liquidating Trust of Revolution Monitoring, LLC, Revolution*

---

[1]By order of reference dated January 27, 2021 (doc. 5), this case has been referred for pretrial management.

*Monitoring Management, LLC, and Revolution Neuromonitoring, LLC v. Cigna Behavioral Health of Texas (In re Revolution Monitoring, LLC)*, No. 20-03116 (Bankr. N.D. Tex.) (Adversary Proceeding) (doc. 21).[2]

Prior to bankruptcy, Revolution Monitoring, LLC, Revolution Monitoring Management, LLC, and Revolution Neuromonitoring, LLC (collectively Revolution) were medical providers of intraoperative neurophysiological monitoring (IONM) medical services for operations around delicate parts of the nervous system. (*See* Adversary Proceeding, doc. 21 at 5-6.)[3] IONM technology provides "real-time" monitoring of the state of the nervous system during surgery, which alerts surgeons of potential evolving neurologic injury in order to allow for corrective actions to avoid permanent injury or death. (*Id.*)  These medical services are primarily utilized in spinal, cranial, facial, throat, and peripheral surgeries. (*Id.*)

Defendants are businesses that provide, underwrite, and administer health insurance benefits of Texas residents, including patients who received Revolution's IONM medical services (Insureds). (*Id.* at 7.) Most Insureds are covered by private employee welfare benefit plans governed by the Employee Retirement Income Security Act of 1974 (ERISA), but some are covered by non-ERISA health benefit plans.[4] (*Id.* at 7.)  These plans are either fully-insured, which means an insurance company assumes financial responsibility for paying medical claims and administrative costs, or

---

[2]This action was originally filed as an adversary proceeding in the United States Bankruptcy Court for Northern District of Texas.  The amended complaint filed in the Adversary Proceeding will be cited because neither party filed a copy of the amended complaint after the reference was withdrawn from the Bankruptcy Court.

[3] Citations to the record refer to the CM/ECF system page number at the top of each page rather than the page numbers at the bottom of each filing.

[4]The non-ERISA plans are categorized as "government plans," where "state or local government entities contract with Defendant to administer health benefits to their employees," or "private plans," where "individuals contract with Defendant to administer health benefits." (*Id.* at 14.)

self-insured, which means an employer acts as the insurer and assumes financial responsibility for payment of medical claims. (*Id.*)  Generally, insurance companies like Defendants are retained to administer self-insured plans and are provided "discretionary authority over the management of the plans, the disposition of the plan assets, and the adjudication of claims." (*Id.*)  The plans obligate Defendants to pay in accordance with Insureds' rights to receive reimbursement for out-of-network care, and they establish an allowable amount to be paid for medical services provided by out-of-network providers like Revolution. (*Id.* at 13.)  As an out-of-network provider, Revolution does not have pre-determined rates under the plans. (*Id.* at 6.)

From between June 2014 and July 2017, Revolution provided out-of-network medical services to Insureds and followed the same process "[a]s a matter of policy." (*Id.* at 9.)  It received orders from physicians to schedule its IONM medical services in connection with medical procedures to be performed at physicians' surgical facilities. (*Id.*)  After receiving orders and before rendering medical services, Revolution obtained verification from Defendants that "each patient was covered by a health benefit plan that provided out-of-network benefits," that "the particular procedures were covered by the relevant health benefit plan," and that it "would be paid in accordance with the health benefit plan." (*Id.*) During the verification process, Defendants did not identify or rely on any exclusions, conditions, or other prerequisites within the relevant health benefit plans, including any anti-assignment provisions. (*Id.*)  Plaintiff alleges that "Revolution would not have provided these services to these patients without first obtaining this verification from Defendants." (*Id.*)

"As a matter of policy," each Insured also executed an "assignment of benefits" form (AOB), assigning his or her benefits to Revolution. (*Id.* at 10.)  Under the AOBs, Revolution received in

relevant part, "(1) the rights and interest to collect and be reimbursed for the medical service(s) performed for the patient; (2) the rights and interest to obtain plan documents and other related documentation and information by both provider and its attorney; (3) the rights and interest to any legal or administrative claims and causes of action; (4) the right to bring legal action, if needed, against the insurer or health benefits plan to recover costs or enforce coverage; and (5) the reasonable assistance of the patient in pursuing third-party payments." (*Id.*)

After medical services were performed, Plaintiff or Revolution submitted claims for payment through Defendants' designated claims-handling channels, but the claims were either denied or drastically underpaid. (*Id.* at 11.) Their appeals of the non-payment or underpayment of the claims via Defendants' designated appeals channels were also denied. (*Id.*) "Defendants failed to provide a specific reason or reasons for the adverse determination, failed to reference the specific plan provisions on which the determination was based, failed to identify, allege, assert, or rely on any exclusions, conditions, or other prerequisites within the health benefit plans, including but not limited to any anti-assignment provisions, and failed to identify and provide a copy of the internal rule, guideline, protocol or other similar criterion that was relied upon in making the adverse determination." (*Id.* at 11-12.) They maintained that "(1) the claim was paid in accordance with the Allowable Amount; (2) the administrator maintained the prior decision; or (3) the claim was processed correctly." (*Id.* at 12.) Revolution billed Defendants more than $16,000,000 for services rendered to Insureds but was paid less than $1,300,000; this was less than 9% of the amount billed. (*Id.* at 12-13.)

Revolution filed for Chapter 11 bankruptcy in the Northern District of Texas between September 27, 2018 and October 5, 2018. *See In re Revolution Monitoring, LLC, et al.*, No. 18-

33730-hdh-11 (Bankr. N.D. Tex.) (Revolution Bankr.).  On July 23, 2019, the bankruptcy court entered an order confirming the Debtors' Second Joint Plan of Reorganization (Bankruptcy Plan), which among other things, provided for the creation of a Liquidating Trust, the appointment of Jeffrey H. Mims as Liquidating Trustee, and the appointment of Plaintiff to serve as Collection Agent. (*See* Revolution Bankr., doc. 138.)  On August 5, 2019, the Liquidating Trust Agreement (LTA) was filed in accordance with the Bankruptcy Plan. (*Id.*, doc. 146.)  Under the terms of the Bankruptcy Plan and LTA, Plaintiff received "full authority regarding the Accounts Receivable to: (i) bill, rebill, and collect the Medical Receivables; (ii) bring lawsuits and settle lawsuits; (iii) negotiate, bring, enforce and settle claims, together with all lawful actions necessary for collection thereof; (iv) enter into collection agreements with third-party collection agencies; (v) enter into engagement agreements with law firms to commence legal adjudication of collections, on behalf of the Debtors and the Liquidating Trustee." (*Id.*, doc. 139 at 17-18.)

Plaintiff's amended complaint asserts claims for benefits under ERISA, 29 U.S.C. § 1132(a)(1)(B), for attorneys' fees under § 1132(g)(1), and for breach of contract. (Adversary Proceeding, doc. 21 at 18-23.) It alleges that Defendants underpaid Revolution on more than 200 claims totaling approximately $16,000,000 in rendered medical services, the "services were medically appropriate and necessary [and] covered by the applicable plan terms, and the claims should have been paid to Revolution as the [ ] Insureds' lawful assignee." (*Id.* at 2, 17.)  It also claims that Plaintiff has standing to pursue this action because Revolution received valid assignments of all the benefits provided to Insureds under the plans, and those benefits were subsequently assigned to Plaintiff. (*Id.* at 19-22.)

On February 25, 2021, Defendants moved to dismiss Plaintiff's amended complaint under

Rule 12(b)(6). (doc. 10.)  Plaintiff responded on March 18, 2021, and Defendants replied on April 1, 2021. (docs. 16, 21.)

## II.  RULE 12(b)(1)

Defendants move to dismiss Plaintiff's amended complaint on grounds that it lacks standing to sue under ERISA. (doc. 10 at 13-14.)[5]

**A.**    **Legal Standard**

A motion to dismiss under Rule 12(b)(1) of the Federal Rules of Civil Procedure challenges a federal court's subject matter jurisdiction. *See* Fed. R. Civ. P. 12(b)(1). Federal courts are courts of limited jurisdiction; without jurisdiction conferred by the Constitution and statute, they lack the power to adjudicate claims. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994) (citations omitted). They "must presume that a suit lies outside this limited jurisdiction, and the burden of establishing federal jurisdiction rests on the party seeking the federal forum." *Howery v. Allstate Ins. Co.*, 243 F.3d 912, 916 (5th Cir. 2001).

A Rule 12(b)(1) motion "may be raised by a party, or by a court on its own initiative, at any stage in the litigation, even after trial and the entry of judgment." *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 506 (2006). A court must dismiss the action if it determines that it lacks jurisdiction over the subject matter. Fed. R. Civ. P. 12(h)(3); *Stockman v. Fed. Election Comm'n*, 138 F.3d 144, 151 (5th Cir. 1998). "When a Rule 12(b)(1) motion is filed in conjunction with other Rule 12 motions, the court should consider the Rule 12(b)(1) jurisdictional attack before addressing any attack on the

---

[5]Although Defendants raise this argument under Rule 12(b)(6), as explained fully below, the Fifth Circuit has determined that "standing under ERISA § 502(a) is subject to challenge through Rule 12(b)(1)." *Lee v. Verizon Commc'ns, Inc.*, 837 F.3d 523, 533 (5th Cir. 2016); *see also Windmill Wellness Ranch, L.L.C. v. Blue Cross & Blue Shield of Texas*, No. SA-19-CV-01211-OLG, 2020 WL 7017739, at *3 (W.D. Tex. Apr. 22, 2020) (analyzing whether plaintiff has standing to assert ERISA claims under Rule 12(b)(1)).

merits." *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001) (per curiam). A dismissal under Rule 12(b)(1) "is not a determination of the merits," and it "does not prevent the plaintiff from pursuing a claim in a court that does have proper jurisdiction." *Id.* Accordingly, considering Rule 12(b)(1) motions first "prevents a court without jurisdiction from prematurely dismissing a case with prejudice." *Id.*

The district court may dismiss for lack of subject matter jurisdiction based on (1) the complaint alone; (2) the complaint supplemented by undisputed facts in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts. *Williamson v. Tucker*, 645 F.2d 404, 413 (5th Cir. 1981). A motion to dismiss based on the complaint alone presents a "facial attack" that requires the court to merely decide whether the allegations in the complaint, which are presumed to be true, sufficiently state a basis for subject matter jurisdiction. *See Paterson v. Weinberger*, 644 F.2d 521, 523 (5th Cir. 1998). "If sufficient, those allegations alone provide jurisdiction." *Id.*

Here, Defendants rely solely on Plaintiff's amended complaint in support of their motion to dismiss for lack of subject matter jurisdiction. The motion therefore presents a facial attack that does not require the resolution of factual matters outside the pleadings. *See Williamson*, 645 F.2d at 412-13; *see also Crowder v. Vill. of Kaufman, Ltd.*, No. 3:09-CV-2181-M, 2010 WL 2710601, at *1 (N.D. Tex. July 7, 2010) (citations omitted) ("A 12(b)(1) motion that challenges standing based on the pleadings is considered a facial attack, and the court reviews only the sufficiency of the allegations in the pleading, presuming them to be true.").

**B.    <u>Standing</u>**

Defendants argue that Plaintiff lacks standing to assert claims for ERISA benefits. (doc. 8

at 8-14.)

"The standing doctrine defines and limits the role of the judiciary and is a threshold inquiry to adjudication." *McClure v. Ashcroft*, 335 F.3d 404, 408 (5th Cir. 2003) (citing *Warth v. Seldin*, 422 U.S. 490,  517-18 (1975). "In essence the question of standing is whether the litigant is entitled to have the court decide the merits of the dispute or of particular issues." *Warth*, 422 U.S. at 498. "The inquiry has two components: constitutional limits, based on the case-and-controversy clause in Article III of the Constitution; and prudential limits, crafted by the courts." *Id.* (citing *Raines v. Byrd*, 521 U.S. 811, 820 (1997)).  "To meet the [Article III] constitutional standing requirement, a plaintiff must show (1) an injury in fact (2) that is fairly traceable to the actions of the defendant and (3) that likely will be redressed by a favorable decision." *St. Paul Fire & Marine Ins. Co. v. Labuzan*, 579 F.3d 533, 539 (5th Cir. 2009) (quoting *Procter & Gamble Co. v. Amway Corp.*, 242 F.3d 539, 560 (5th Cir. 2001)) (alteration in *St. Paul Fire & Marine Ins. Co.*).  Prudential standing relates to whether: (1) a plaintiff's grievance falls within the zone of interests protected by the statute invoked, (2) the complaint raises a generalized grievance more properly addressed by the legislature, and (3) the plaintiff is asserting his or her own legal rights and interests rather than the legal rights and interests of third parties. *St. Paul Fire & Marine Ins. Co.*, 579 F.3d at 539; *see also Elk Grove Unified Sch. Dist. v. Newdow*, 542 U.S. 1, 11 (2004).

The argument that a plaintiff lacks standing to assert a claim for benefits under ERISA implicates prudential standing, as it "challenges [the] plaintiff's ability to assert a claim under a particular statute, i.e., ERISA." *Mem'l Hermann Health Sys. v. Pennwell Corp. Med. & Vision Plan*,

No. CV H-17-2364, 2017 WL 6561165, at *4 (S.D. Tex. Dec. 22, 2017).[6] "Unlike a dismissal for lack of constitutional standing, which should be granted under Rule 12(b)(1), a dismissal for lack of prudential or statutory standing is properly granted under Rule 12(b)(6)." *Harold H. Huggins Realty, Inc. v. FNC, Inc.*, 634 F.3d 787, 795, n. 2 (5th Cir. 2011). Nevertheless, the Fifth Circuit has long held that "standing to bring an action founded on ERISA is a 'jurisdictional' matter," *Cobb v. Central States*, 461 F.3d 632, 635 (5th Cir. 2006), and "is subject to challenge through Rule 12(b)(1)," *Lee v. Verizon Commc'ns, Inc.*, 837 F.3d 523, 533 (5th Cir. 2016). *See LeTourneau Lifelike Orthotics & Prosthetics, Inc. v. Wal-Mart Stores, Inc.*, 298 F.3d 348, 351 (5th Cir. 2002) (finding ERISA standing "jurisdictional"); *Hermann Hosp. v. MEBA Med. & Benefits Plan*, 959 F.2d 569, 572 (5th Cir. 1992), *overruled in part on other grounds by Access Mediquip, L.L.C. v. UnitedHealthcare Ins. Co.*, 698 F.3d 229 (5th Cir. 2012) (analyzing ERISA standing as a question of subject matter jurisdiction); *accord Cell Sci. Sys. Corp. v. Louisiana Health Serv.*, 804 F. App'x 260, 262 (5th Cir. 2020) (explaining that third-party standing pursuant to an assignment of benefits under ERISA is "jurisdictional in nature"). Accordingly, Defendants' motion to dismiss the ERISA claims for lack of standing is properly analyzed under Rule 12(b)(1). *See LeTourneau*, 298 F.3d at 353; *see, e.g., Mem'l Hermann Health Sys.*, 2017 WL 6561165, at *4 ("The court may therefore properly consider defendants' challenge to plaintiff's standing under Rule 12(b)(1).").[7]

---

[6]Even though Defendants do not argue that Plaintiff lacks constitutional standing, "the Court's independent obligation to assure itself of its jurisdiction requires it to examine the constitutional dimension of standing in addition to any statutory standing analysis." *Windmill Wellness Ranch, L.L.C.*, 2020 WL 7017739, at *3 (citing *Ford v. NYLCare Health Plans of Gulf Coast, Inc.*, 301 F.3d 329, 331-32 & n. 1 (5th Cir. 2002)). The amended complaint alleges that Plaintiff sustained damages from Defendants' failure to pay for medical services rendered to Insureds, and that it would be redressed by, among other things, an award of unpaid benefits. Plaintiff has therefore satisfied the elements for Article III constitutional standing. *See St. Paul Fire & Marine Ins. Co.*, 579 F.3d at 539.

[7]Defendants also argue that Plaintiff's breach of contract claim should be dismissed for lack of standing. As explained below, this argument implicates prudential standing is considered under Rule 12(b)(6).

Under Section 502(a) of ERISA, a participant or beneficiary is authorized to bring a civil action "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." *Lone Star OB/GYN Assocs. v. Aetna Health, Inc.*, 579 F.3d 525, 529 (5th Cir. 2009) (quoting 29 U.S.C. § 1132(a)(1)(B)). "It is well established that a healthcare provider, though not a statutorily designated ERISA beneficiary, may obtain standing to sue derivatively to enforce an ERISA plan beneficiary's claim." *Harris Methodist Fort Worth v. Sales Support Servs. Inc. Emp. Health Care Plan*, 426 F.3d 330, 333-34 (5th Cir. 2005). While "'[h]ealthcare providers may not sue in their own right to collect benefits under an ERISA plan,' they 'may bring ERISA suits standing in the shoes of their patients' by showing that they have received assignments of rights from their patients." *Electrostim Med. Servs., Inc. v. Health Care Serv. Corp.*, 614 F. App'x 731, 742 (5th Cir. 2015) (quoting *N. Cypress Med. Ctr. Operating Co. v. Cigna Healthcare*, 781 F.3d 182, 191 (5th Cir. 2015)); *see Dallas Cty. Hosp. Dist. v. Assocs. Health & Welfare Plan*, 293 F.3d 282, 285 (5th Cir. 2002) ("It is clear in this Circuit that a health care provider may possess standing under ERISA by virtue of a valid assignment."). "This is so because a plan participant's assignee is considered a beneficiary of the plan and, therefore, may bring litigation to collect benefits owed under the plan." *Rapid Tox Screen LLC v. Cigna Healthcare of Texas Inc.*, No. 3:15-CV-3632-B, 2017 WL 3658841, at *4 (N.D. Tex. Aug. 24, 2017) (quoting *N. Cypress Med. Ctr. Operating Co. v. Cigna Healthcare*, 782 F. Supp.2d 294, 300 (S.D. Tex. 2011)) (internal quotations omitted).

Here, Plaintiff alleges that "[a]s a matter of policy, each Cigna Insured treated by Revolution signed an assignment of benefits form," and that "[p]ursuant to this policy, each and every Cigna insured actually assigned their benefits to Revolution." (Adversary Proceeding, doc. 21 at 10.) The

AOB attached to the amended complaint "is an example of the copy of the Assignment of Benefits each patient executed upon arrival for a procedure at Revolution's facility." (*Id.*) It alleges that the AOBs executed by Insureds provide Revolution standing as a beneficiary to recover their benefits under the ERISA plans, including the amounts owed for out-of-network medical services rendered. (*Id.* at 10-11, 27.)[8]  Courts in this district have found similar allegations sufficient to withstand a motion to dismiss for lack of standing.  *See, e.g., Innova Hosp. San Antonio, L.P. v. Blue Cross & Blue Shield of Georgia, Inc.*, 995 F. Supp. 2d 587, 599 (N.D. Tex. 2014) (holding that plaintiffs had sufficiently pleaded standing based on an assignment of rights with their allegations that they "required all patients to 'execute an assignment of benefits form prior to receiving healthcare services,'" that they "received an assignment of benefits from the patients," and that they "had the right to enforce the terms of the plans and recover the benefits due under the plans"); *Encompass Off. Sols., Inc. v. Connecticut Gen. Life Ins. Co.*, No. 3:11-CV-02487-L, 2012 WL 3030376, at *4 (N.D. Tex. July 25, 2012) (finding allegations that "[p]atients entered into various contracts for health insurance coverage with CIGNA," that "[i]t was Encompass's practice to receive ... 'Assignments of Benefits' from patients who used Encompass for surgeries or procedures," and that "Encompass possesses ... Assignments of Benefits from each patient on behalf of whom Encompass asserts claims herein," were sufficient "to withstand a facial attack on the court's subject matter jurisdiction and establish standing to pursue claims for reimbursement of medical benefits"); *see also Rapid Tox Screen LLC v. Cigna Healthcare of Texas Inc.*, No. 3:15-CV-3632-B, 2017 WL 3658841, at *5 (N.D. Tex. Aug. 24, 2017) (finding allegations that patients "expressly and knowingly execute[d] an assignment of their insurance benefits for the provided laboratory services

---

[8]Defendants do not allege that the language in the AOBs is insufficient to confer standing on Plaintiff to sue for payment of benefits due to Insureds under the plans.

by [Plaintiff]" was sufficient to withstand a facial attack on the court's subject matter jurisdiction, and rejecting defendants' argument that " Plaintiff lacks standing because it failed to allege that every member whose claim Plaintiff is pursuing knowingly and willingly assigned their benefits to Plaintiff").[9]

Plaintiff's allegations are sufficient to withstand a facial attack on the Court's subject matter jurisdiction and to establish that it has standing to sue for ERISA benefits under the plans. Accordingly, Defendants' motion to dismiss for lack of standing should be denied.

### III.  RULE 12(b)(6)

Defendants also move to dismiss Plaintiff's amended complaint under Rule 12(b)(6) for failure to state a claim.  (doc. 10 at 14-15.)

### A.     <u>Legal Standard</u>

Rule 12(b)(6) allows motions to dismiss for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6).  Under the 12(b)(6) standard, a court cannot look beyond the face of the pleadings. *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996); *see also Spivey v. Robertson*,

---

[9]In their reply, Defendants argue for the first time that *Sky Toxicology, Ltd. v. United Healthcare Ins. Corp.*, No 16-CV-01094, 2018 WL 4211741 (W.D. Tex. 2018), is "directly on point" and supports dismissal of this case. (doc. 21 at 3.) This case was cited in the motion to dismiss for a different argument.  The purpose of filing a reply brief "is to rebut the nonmovant's response, thereby persuading the court that the movant is entitled to the relief requested by the motion." *See Springs Indus., Inc. v. American Motorists Ins. Co.*, 137 F.R.D. 238, 239-40 (N.D. Tex. 1991). A movant is not ordinarily permitted to make new arguments in a reply because this deprives the non-movant of a meaningful opportunity to respond. *See id.* Because Plaintiff did not have a meaningful opportunity to respond to the new argument, it will not be considered. *See Penn. Gen. Ins. Co. v. Story*, No. 3:03-CV-0330-G, 2003 WL 21435511, at *1 (N.D. Tex. June 10, 2003) ("[A] court generally will not consider arguments raised for the first time in a reply brief."); *see, e.g., Highpoint Risk Servs. LLC v. Companion Prop. & Cas. Ins. Co.*, No. 3:14-CV-3398-L, 2015 WL 5613336 (N.D. Tex. Aug. 25, 2015), *adopted by* No. 3:14-CV-3398-L, 2015 WL 5666727 (N.D. Tex. Sept. 24, 2015) (declining to consider new arguments made for the first time in a reply brief).  Even if considered, however, the recommendation would remain the same because *Sky Toxicology* is distinguishable.  It found allegations that the plaintiffs "routinely received an assignment of benefits [ ] from individual insureds" inadequate to allege standing because the plaintiffs "must allege that *all* insureds (or at least those on whose behalf they are bringing suit) were required to—and did—execute assignment-of-benefit forms prior to receiving healthcare services." *Sky Toxicology*, 2018 WL 4211741, at *3 (emphasis original).  The amended complaint in this case expressly alleges that "each and every Cigna insured actually assigned their benefits to Revolution," as reflected by the AOB "each patient executed upon arrival for a procedure at Revolution's facility." (*See* Adversary Proceeding, doc. 21 at 10.)

197 F.3d 772, 774 (5th Cir. 1999), *cert. denied*, 530 U.S. 1229 (2000).

Pleadings must show specific, well-pleaded facts, not mere conclusory allegations to avoid dismissal. *Guidry v. Bank of LaPlace*, 954 F.2d 278, 281 (5th Cir. 1992). The court must accept those well-pleaded facts as true and view them in the light most favorable to the plaintiff. *Baker*, 75 F.3d at 196. "[A] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of [the alleged] facts is improbable, and 'that a recovery is very remote and unlikely.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007) (citation omitted). Nevertheless, a plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action's elements will not do." *Id*. at 555; *accord Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (emphasizing that "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions"). The alleged facts must "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. In short, a complaint fails to state a claim upon which relief may be granted when it fails to plead "enough facts to state a claim to relief that is plausible on its face." *Id*. at 570.

> A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'"

*Iqbal*, 556 U.S. at 678 (citations omitted). When plaintiffs "have not nudged their claims across the line from conceivable to plausible, their complaint must be dismissed." *Twombly*, 550 U.S. at 570; *accord Iqbal*, 556 U.S. at 678.

As noted, a court cannot look beyond the pleadings in deciding a Rule 12(b)(6) motion. *Spivey*, 197 F.3d at 774; *Baker*, 75 F.3d at 196. When a party presents "matters outside the

pleadings," a court has "complete discretion" to either accept or exclude the evidence for purposes of determining the motion. *Isquith ex rel. Isquith v. Middle S. Utils., Inc.*, 847 F.2d 186, 193 n.3 (5th Cir. 1988); *accord Gen. Retail Servs., Inc. v. Wireless Toyz Franchise, LLC*, 255 F. App'x 775, 783 (5th Cir. 2007). However, "[i]f . . . matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56," and "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." Fed. R. Civ. P. 12(d).

Nevertheless, "pleadings" for purposes of a motion to dismiss include attachments to the complaint. *See In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (citation omitted). Similarly, documents "attache[d] to a motion to dismiss are considered part of the pleadings, if they are referred to in the plaintiff's complaint and are central to her claim[s]." *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498-99 (5th Cir. 2000) (citation omitted); *accord Benchmark Electronics, Inc. v. J.M. Huber Corp.*, 343 F.3d 719, 724 (5th Cir. 2003). Accordingly, documents falling in these categories may be properly considered without converting the motion to dismiss into a motion for summary judgment.

A copy of the AOB is attached to the amended complaint. (*See* Adversary Proceeding, doc. 21 at 27.) Because this document is properly considered part of the pleadings, it is unnecessary to convert the motion to dismiss into a motion for summary judgment. *See Katrina Canal Breaches Litig.*, 495 F.3d at 205.

## B.    ERISA Benefits

Defendants argue that all claims asserted in the amended complaint for ERISA benefits should be dismissed for failure to state a claim. (doc. 10 at 14-15.)

### 1.   *Exhaustion of Administrative Remedies*[10]

Defendants first argue that Plaintiff failed to sufficiently allege exhaustion of administrative remedies. (doc. 10 at 16-19.)

"Claimants seeking benefits from an ERISA plan must first exhaust available administrative remedies under the plan before bringing suit to recover benefits." *McGowin v. Manpower Int'l, Inc.*, 363 F.3d 556, 559 (5th Cir. 2004) (quoting *Bourgeois v. Pension Plan for Employees of Santa Fe Int'l Corp.*, 215 F.3d 475, 479 (5th Cir. 2000)); *see also Texas Gen. Hosp., LP v. United Healthcare Servs., Inc.*, No. 3:15-CV-02096-M, 2016 WL 3541828, at *5 (N.D. Tex. June 28, 2016) (same) (citing *Coop Benefits Admin'rs, Inc. v. Ogden*, 367 F.3d 323, 336 (5th Cir. 2004)).  "The primary purposes of the exhaustion requirement are to: (1) uphold Congress' desire that ERISA trustees be responsible for their actions, not the federal courts; (2) provide a sufficiently clear record of administrative action if litigation should ensue; and (3) assure that any judicial review of fiduciary action (or inaction) is made under the arbitrary and capricious standard, not *de novo*." *Denton v. First Nat. Bank of Waco, Texas*, 765 F.2d 1295, 1300 (5th Cir. 1985).  "However, '[t]he Fifth Circuit has held that exceptions to the exhaustion requirement are appropriate where the available administrative remedies either are unavailable or wholly inappropriate to the relief sought, or where the attempt to exhaust administrative remedies would be a patently futile course of action.'" *Texas Gen. Hosp., LP*, 2016 WL 3541828, at *5 (quoting *N. Cypress Med. Ctr. Operating Co.*, 782 F. Supp. 2d at 304).

The Fifth Circuit has held that "[e]xhaustion of administrative remedies [ ] is not a jurisdictional bar; it is an affirmative defense." *N. Cypress Med. Ctr. Operating Co.*, 782 F. Supp.

---

[10]Because ERISA exhaustion is an absolute bar to a party's claims, this affirmative defense is considered first.

2d at 303 (citations omitted); *see Crowell v. Shell Oil Co.*, 541 F.3d 295, 308-09 (5th Cir. 2008)

("'[W]e have never construed the [ERISA exhaustion] doctrine strictly as a jurisdictional bar' and

have referred to it as a 'defense.'") (citation omitted). "The proper procedural vehicle for assertion

of the affirmative defense of lack of ERISA administrative exhaustion is by way of properly

supported motion for summary judgment." *Ford v. Freemen*, 388 F. Supp. 3d 692, 708 (N.D. Tex.

2019) (quoting *Thibodeaux v. Prudential Ins. Co. of Am.*, 2008 WL 5397236, at *1 (W.D. La. Oct.

30, 2008)); *see N. Cypress Med. Ctr. Operating Co.*, 782 F. Supp. 2d at 304 (quoting *Am. Surgical

Assistants, Inc. v. Great W. Healthcare of Tex., Inc.*, 2010 WL 565283, at *2 (S.D. Tex. Feb. 17,

2010) ("[A] complaint is not subject to dismissal under Rule 12(b)(6) because it fails to allege facts

disproving a possible affirmative defense."). Nevertheless, "[i]f, based on the facts pleaded and

judicially noticed, a successful affirmative defense appears, then dismissal under Rule 12(b)(6) is

proper." *Hall v. Hodgkins*, 305 F. App'x 224, 227-28 (5th Cir. 2008) (per curiam) (citing *Kansa

Reinsurance Co., Ltd. v. Cong. Mortgage Corp. of Tex.*, 20 F.3d 1362, 1366 (5th Cir. 1994)).

   Here, Plaintiff alleges that "Revolution properly and timely submitted claims through

Defendants' designated claims handling channels," and after they "either denied or underpaid the

claims, Revolution or Plaintiff properly and timely appealed the non-payment or underpayment of

the claims through Defendants' designated appeals channels." (Adversary Proceeding, doc. 21 at

11.) It also alleges that "Defendants denied each and every appeal for each and every claim at issue

in this lawsuit, thereby exhausting Revolution and Plaintiff's administrative remedies." (*Id.*)

Accepting these allegations as true, as required for purposes of Rule 12(b)(6) review, Plaintiff has

sufficiently alleged that it exhausted its administrative remedies by pursuing the full administrative

process for each claim before filing suit.

16

### 2.    *Identification of Claims*

Defendants also argue that Plaintiff fails to identify the benefit claims at issue. (doc. 10 at 14-16.)

As discussed, "[i]f a participant or beneficiary of an ERISA plan believes that benefits promised to him under the terms of the plan are not provided, he can bring suit seeking provision of those benefits." *Aetna Health Inc. v. Davila*, 542 U.S. 200, 210 (2004) (quotation omitted).  "In asserting claims for benefits under ERISA, a plaintiff must allege in its complaint enough facts about an ERISA plan's provisions to make a [§ 502] claim plausible and provide the defendant notice as to which provisions it allegedly breached." *Advanced Physicians, S.C. v. Connecticut Gen. Life Ins. Co.*, No. 3:16-CV-2355-G, 2017 WL 4868180, at *6 (N.D. Tex. Oct. 27, 2017) (citing *Texas Gen. Hosp., LP*, 2016 WL 3541828, at *4); *see also Mission Toxicology, L.L.C. v. UnitedHealthcare Ins. Co.*, No. 5:17-CV-1016-DAE, 2018 WL 2222854, at *6 (W.D. Tex. Apr. 20, 2018) (same).  "As a general rule, a plaintiff asserting an ERISA benefits claim 'must provide the court with enough factual detail to determine whether the services were indeed covered services under the plan.'" *Windmill Wellness Ranch, L.L.C. v. Blue Cross & Blue Shield of Texas*, No. SA-19-CV-01211-OLG, 2020 WL 7017739, at *5 (W.D. Tex. Apr. 22, 2020) (citing *Paragon Office Servs., LLC v. UnitedHealthcare Ins. Co.*, No. 3:11-CV-2205-D, 2012 WL 5868249, at *2 (N.D. Tex. Nov. 20, 2012).  This includes "enough basic factual information regarding each of the specific claims that [ ] are actually at issue." *Doctor's Hosp. of Slidell, LLC v. United HealthCare Ins. Co.*, No. CV 10-3862, 2011 WL 13213620, at *3 (E.D. La. Apr. 27, 2011) (explaining that plaintiffs should provide information " including the identity of the patient and the nature and date of the services, the patient's ERISA plan, the amount billed and paid on those claims, the scope of the assignment

17

of rights (including whether it assigned the right to request plan documents), the steps taken to exhaust administrative appeals for those claims, the requests made for plan documents, and the nature of pre-service verifications"); *see Mission Toxicology, L.L.C.*, 2018 WL 2222854, at *6 (finding information regarding "(1) the insured's name; (2) the plan or the terms of the insured's plan that was allegedly violated; and (3) the services provided under the plan," "paramount" to sufficiently state a claim for ERISA benefits). "Absent such allegations, a complaint fails to state a claim under ERISA § 502(a)(1)(B)." *Texas Gen. Hosp., LP*, at *4 (citing *Paragon Office Services LLC*, 2012 WL 5868249, at *2. The Fifth Circuit recently cautioned, however, that "plaintiffs alleging claims under 29 U.S.C. § 1132(a)(1)(B) for plan benefits need not necessarily identify the specific language of every plan provision at issue to survive a motion to dismiss under Rule 12(b)(6)." *Innova Hosp. San Antonio, Ltd. P'ship v. Blue Cross & Blue Shield of Georgia, Inc.*, 892 F.3d 719, 729 (5th Cir. 2018).

Here, Plaintiff alleges that between June 2014 and July 2017, Defendants failed to properly reimburse Revolution for IONM medical services provided to Insureds, even though the "services were medically appropriate and necessary, covered by the applicable plan terms, and the claims should have been paid to Revolution as the Aetna Insureds' lawful assignee." (Adversary Proceeding, doc. 21 at 2, 17.) "Defendants' failure to reimburse spanned over a period of approximately three years, covering more than 200 claims and exceeding $16,000,000 in rendered medical services." (*Id.* at 2.) It alleges that under the terms of a representative ERISA plan, Defendants agreed to pay 50% of the costs for out-of-network "Outpatient Facility Services and Doctor/Physician surgery charges," which covers the services rendered by Revolution, but they made claims determinations that had the effect of reimbursing less than the percentage of actual

charges required by the plans. (*Id.* at 20 n.6.) "Defendants abused their discretion in administering the claims, breached the terms of the plan documents, and violated their legal obligations as plan administrators under ERISA and federal common law each time they failed to make payment, made only partial payment, or delayed payment of benefits, without complying with ERISA requirements governing the claims process and adverse benefit determinations." (*Id.* at 20.)

While the amended complaint generally alleges that there are "200 claims [ ] exceeding $16,000,000 in rendered medical services," it does not specifically identify those claims. Plaintiff argues that Defendants are aware of all the claims at issue because it provided them detailed information about those claims before filing this lawsuit. (doc. 16 at 10.)[11] Defendants' "alleged knowledge of the claims or the plan terms cannot cure these pleading defects," however. *Sky Toxicology, Ltd. v. UnitedHealthcare Ins. Co.*, No. 5-16-CV-01094-FB-RBF, 2018 WL 4211741, at *5 (W.D. Tex. Sept. 4, 2018) (citing *Mora v. Albertson's, L.L.C.*, No. EP-15-CV-00071-FM, 2015 WL 3447963, at *3 (W.D. Tex. May 28, 2015) ("[F]ederal pleading standards require complaints to be facially sufficient ... When a complaint contains insufficient facts to state a plausible claim to relief, it is irrelevant whether the parties have knowledge of unstated facts that would cure the defect.")). Plaintiff also argues that this information includes "sensitive identifying information" about Insureds that should not be disclosed in a public complaint. (doc. 10 at 11.) It could have filed

---

[11]Plaintiff's response to the motion to dismiss states that it sent Defendants a confidential settlement offer letter on November 8, 2019, "claiming total billed charges of $16,554,421 which spanned 206 unpaid claims." (doc. 16 at 10.) A copy of the letter is attached to the response and includes "a spreadsheet of each claim at issue, including each Cigna insured's name, ID number, insurance company, the date of each service (all between June 2014 and August 2017), policy number, claims number, and the services provided." (*Id.*; doc. 20.) Plaintiff's new allegations and exhibit in its response are not part of the pleadings to be considered for purposes of the motion to dismiss. *See Hearn v. Deutsche Bank Nat. Trust Co.*, 3:13-CV-2417-B, 2014 WL 4055473 at *4 n.3 (N.D. Tex. Aug. 15, 2014); *Middleton v. Life Ins. Co. of North America*, H-09-CV-3270, 2010 WL 582552 at *5 (S.D. Tex. Feb. 12, 2010) (claim raised for first time in response to motion to dismiss was not properly before the court) (citing *Fisher v. Metro. Life Ins. Co.*, 895 F.2d 1073, 1078 (5th Cir. 1990)). Plaintiff has not sought or been granted leave to amend its complaint to add these allegations and exhibit, and it has not shown that Defendants consented to an amendment. *See* Fed. R. Civ. P. 15(a)(2).

a motion for leave to file sensitive or protected information under seal, however. *See Sky Toxicology, Ltd.*, 2018 WL 4211741, at *5 ("Like other litigants, the Labs should employ the usual, appropriate measures to protect confidential information in litigation, including seeking leave to file such information under seal or pursuant to a qualified protective order as may be necessary.").

Because Plaintiff's amended complaint does not include any factual information that identifies the specific benefit claims at issue, it lacks the specificity necessary to state a facially plausible claim for recovery of ERISA benefits.[12] *See Mission Toxicology, L.L.C.*, 2018 WL 2222854, at *6; *Doctor's Hosp. of Slidell, LLC*, 2011 WL 13213620, at *3; *see, e.g., Sky Toxicology, Ltd.*, 2018 WL 4211741, at *4 (granting motion to dismiss because plaintiff "fail[ed] to include facts sufficient to put [defendant] on notice of the thousands of claims submitted over an unspecified period of years that are the subject of [its] claims"); *Infectious Disease Drs., P.A. v. Bluecross Blueshield of Texas*, No. 3:13-CV-2920-L, 2014 WL 4262164, at *3 (N.D. Tex. Aug. 29, 2014) ("Plaintiff fails to provide BCBS Michigan with facts specifying: (1) the patients that are covered by BCBS Michigan plans; (2) the treatments these patients received; (3) the terms of the patients' insurance plan; and (4) the IDD doctors that performed services for these patients."). Defendants' motion to dismiss Plaintiff's claim for ERISA benefits should be granted.

---

[12]Plaintiff argues that "[r]ather than dismiss the case . . . the Court should allow [it] to stand or, in the alternative, grant leave to amend and re-file under seal." (doc. 16 at 11.) A party is not entitled to remedy a pleading deficiency simply by seeking leave to amend in response to a motion to dismiss, however. *Spiller v. City of Texas City, Police Dep't*, 130 F.3d 162, 167 (5th Cir. 1997). When a party opposes a motion to dismiss on its merits while also asking for leave to amend should dismissal be deemed proper, the party "may not avoid the implications" of its choices. *Id.* The request also does not comply with Local Rule 15.1 of the Local Civil Rules for the Northern District of Texas, which provides that when a party files a motion for leave to file an amended pleading, that party must attach the proposed amended pleading as an exhibit. Compliance with the rules of procedure is required of all parties and leave to amend may be denied for non-compliance. *Shabazz v. Franklin*, 380 F. Supp. 2d 793, 798 (N.D. Tex. 2005). The request to amend is denied without prejudice to filing a compliant motion.

20

C.    **Attorneys' Fees and Costs**

Defendants argue that Plaintiff fails to state a claim for attorneys' fees and costs under § 1132(g)(1). (doc. 10 at 14.).

"ERISA permits 'the court in its discretion [to] allow a reasonable attorney's fee and costs of action to either party.'" *Leipzig v. Principal Life Ins. Co.*, 481 F. App'x 865, 871 (5th Cir. 2010) (quoting 29 U.S.C. § 1132(g)(1)) (alteration in *Leipzig*).   "[T]he Supreme Court requires that a claimant 'show some degree of success on the merits before a court may award fees.'" *N. Cypress Med. Ctr. Operating Co., Ltd. v. Aetna Life Ins. Co.*, 737 F. App'x 233, 233 (5th Cir. 2018) (quoting *Hardt v. Reliance Standard Life Ins. Co.*, 560 U.S. 242, 255 (2010)) (internal quotations omitted). "A claimant does not satisfy that requirement by achieving trivial success on the merits or a purely procedural victory." *Id.*

Because Plaintiff's claim for ERISA benefits is subject to dismissal on the merits, it is not entitled to attorneys' fees and costs under § 1132(g)(1). *See Hardt*, 560 U.S. at 255.  Accordingly, Defendants' motion to dismiss Plaintiff's request for attorneys' fees and costs should be granted.

D.    **Breach of Contract**

Defendants argue that the claim for breach of contract should also be dismissed because Plaintiff lacks standing to sue under the non-ERISA plans, and because the amended complaint fails to state a plausible claim for breach of contract. (doc. 10 at 13-16.)

1.    *Standing*

"As a general rule [in Texas], only parties to a contract and their successors-in-interest have standing to assert defects in the contract or seek its enforcement through breach claims." *Priester v. Long Beach Mortg. Co.*, No. 4:16-CV-00449-ALM-CAN, 2016 WL 9504324, at *7 (E.D. Tex.

Dec. 16, 2016), *adopted by* 2017 WL 510350 (E.D. Tex. Feb. 8, 2017) (citing *S. Tex. Water Auth. v. Lomas*, 223 S.W.3d 304, 306 (Tex. 2007)). "[U]nder Texas law, a health care provider has standing to sue under a patient's insurance policy that is not governed by ERISA if it obtained an assignment of the patient's rights under the insurance policy." *Encompass Off. Sols., Inc. v. Connecticut Gen. Life Ins. Co.*, No. 3:11-CV-02487-L, 2017 WL 3268034, at *7 (N.D. Tex. July 31, 2017) (citing *Electrostim Med. Servs., Inc.*, 614 F. App'x at 740).

For the same reasons that Plaintiff has standing to sue for ERISA benefits, it also has standing to sue for breach of contract. As explained, Plaintiff has pleaded sufficient facts showing that Revolution received executed AOBs from the Insureds for all claims at issue. It also adequately alleged that Insureds' rights to benefits under the plans were subsequently assigned to it in the Revolution Bankruptcy. Because an assignee of a contract has standing to enforce that contract, Plaintiff has sufficiently alleged derivative standing to sue for breach of contract under the non-ERISA plans. *See Encompass Off. Sols., Inc.*, 2017 WL 3268034, at *7; *see also First–Citizens Bank & Trust Co. v. Greater Austin Area Telecomms. Network*, 318 S.W.3d 560, 566 (Tex.App.—Austin 2010, no pet.) ("An assignee stands in the shoes of the assignor and may assert those rights that the assignor could assert, including bringing suit."). Accordingly, the motion to dismiss the breach of contract claim for lack of standing should be denied.

### 2.    *Identification of Claims*

Defendants argue that Plaintiff fails to state a plausible claim for breach of contract because it fails to identify the benefit claims at issue. (doc. 10 at 14.)

The essential elements of a breach of contract claim in Texas are: (1) the existence of a valid contract; (2) breach of the contract by the defendant; (3) performance or tendered performance by

the plaintiff; and (4) damages sustained by the plaintiff as a result of the defendant's breach. *Mullins v. TestAmerica, Inc*., 564 F.3d 386, 418 (5th Cir. 2009) (citing *Aguiar v. Segal*, 167 S.W.3d 443, 450 (Tex. App.–Houston [14th Dist.] 2005, pet. denied)).

Here, Plaintiff alleges that under the non-ERISA plans, Defendants agreed to pay claims for out-of-network medical services rendered in accordance with the allowable amount. (Adversary Proceeding, doc. 21 at 22.) It alleges that under the terms of a representative non-ERISA plan, Defendants agreed to pay 50% of the costs for "speciality care physician services" and "inpatient and outpatient facility services" provided by out-of-network providers like Revolution. (*Id.* at 22 n.7.) Plaintiff also alleges that "Revolution provided medical treatment to the Cigna Insureds, and submitted appropriate bills directly to Defendants for said medical services in accordance with the terms of the health benefit plans and Texas law," and that "Revolution has otherwise complied with all terms of the health benefit plans." (*Id.* at 23.) It asserts that "Defendants' failure to pay out-of-network benefits in accordance with the allowable amount within the health benefit plan breached the contractual agreements to administer health benefits to" the Insureds. (*Id.*) It claims that it suffered damages because of "Defendants' material breaches of contract and non-payment for services duly rendered." (*Id.*)

These allegations are insufficient to state a claim for breach of contract for the same reasons as Plaintiff's claim for ERISA benefits. As explained, the amended complaint fails to include sufficient facts to identify the claims for benefits that were not paid by Defendants in accordance with the terms of the non-ERISA plans. Without sufficient facts and allegations about each of the claims at issue, a complaint fails to adequately plead a claim for breach of contract. *See Electrostim Med. Servs., Inc. v. Health Care Serv. Corp.*, No. CV H-11-2745, 2017 WL 1710567, at *8 (S.D.

Tex. May 3, 2017) ("Each patient's assigned claim is an individual breach of contract. Electrostim must plead enough facts, with enough detailed information, to make these breach-of-contract claims plausible."). Accordingly, Defendants' motion to dismiss Plaintiff's breach of contract claim for failure to state a claim should be granted.

## IV.  OPPORTUNITY TO AMEND

Notwithstanding a plaintiff's failure to plead sufficient facts, "district courts often afford plaintiffs at least one opportunity to cure pleading deficiencies before dismissing a case, unless it is clear that the defects are incurable or the plaintiffs advise the court that they are willing or unable to amend in a manner that will avoid dismissal." *In re Am. Airlines, Inc., Privacy Litig.*, 370 F. Supp. 2d 552, 567-68 (N.D. Tex. 2005) (citing *Great Plains Trust Co. V. Morgan Stanley Witter & Co.*, 313 F.3d 305, 329 (5th Cir. 2002)). Nevertheless, courts may appropriately dismiss an action with prejudice without giving an opportunity to amend when the plaintiff fails to respond, and the plaintiff has had ample opportunity to amend the complaint. *See Rodriguez v. United States*, 66 F.3d 95, 97 (5th Cir. 1995) (noting passage of 327 days). Dismissal with prejudice is also appropriate if a court finds that the plaintiff has alleged his or her best case. *Jones v. Greninger*, 188 F.3d 322, 327 (5th Cir. 1999).

As discussed, Plaintiff's claims lack sufficient specificity to survive a motion to dismiss under Rule 12(b)(6). The exhibit attached to Plaintiff's response, while not properly before the Court for purposes of the motion to dismiss, indicates that Plaintiff may be able to assert plausible claims for ERISA benefits and breach of contract if it is able to file an amended complaint. It should therefore be offered an opportunity to amend its complaint to allege claims that satisfy the federal pleading standard.

## V.  RECOMMENDATION

If Plaintiff does not file an amended complaint within the 14 days allowed for objections to this recommendation, or a deadline otherwise set by the Court, Defendants' motion to dismiss should be **GRANTED** in part, and Plaintiff's claims against them should be dismissed with prejudice.  If Plaintiff timely files an amended complaint, however, Defendants' motion to dismiss should be **DENIED as moot**, and the action should be allowed to proceed on the amended complaint.

**SO RECOMMENDED** on this 6th day of July, 2021.

IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE

## INSTRUCTIONS FOR SERVICE AND
## NOTICE OF RIGHT TO APPEAL/OBJECT

A copy of these afflict, conclusions and recommendation shall be served on all parties in the manner provided by law.  Any party who objects to any part of these findings, conclusions and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).  In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions and recommendation where the disputed determination is found.  An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific.  Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error.  *See Douglass v. United Servs. Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE